IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff-Respondent, | § | |
| | § | |
| v. | § | Cr. No. 2:10-1066 |
| | § | C.A. No. 2:14-144 |
| FIDEL ELFEGO BOYSO-GUTIERREZ, | § | |
|     Defendant-Movant. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant-Movant Fidel Elfego Boyso-Gutierrez (Boyso-Gutierrez) filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and a Memorandum in Support. D.E. 112, 112-1. Pending before the Court is the United States of America's (the "Government") motion to dismiss (D.E. 118), to which Boyso-Gutierrez filed a reply (D.E. 119). The Court also has before it the affidavit of defense trial counsel. D.E. 117.[1]

## I. MOVANT'S ALLEGATIONS

Boyso-Gutierrez alleges that his counsel provided ineffective assistance throughout the criminal proceedings. He claims counsel: 1) failed to provide or discuss with him the Government's discovery; 2) failed to negotiate a plea agreement although he told counsel numerous times that he did not wish to go to trial; 3) lied and mislead him to induce him to go to trial; 4) miscalculated his sentencing exposure, 5) had a conflict of interest due to counsel's relationship with Angel Labra; 6) failed to subpoena trial witnesses; 7) failed to review the Presentence Investigation report with him, and 8) failed to file a sentencing memorandum.

---

[1] The Docket Entry references are to the criminal case.

## II.  FACTUAL BACKGROUND AND PROCEEDINGS

Boyso-Gutierrez was a passenger on a commercial bus bound for Houston on October 30, 2010, when the bus was stopped at the Sarita, Texas Border Patrol Checkpoint for an immigration check. A Border Patrol drug dog alerted to a black Samsonite suitcase tagged with Boyso-Gutierrez' name. Boyso-Gutierrez identified the suitcase as his and cooperated with the agent who wanted the suitcase opened for inspection. The agent noted that the suitcase had white hand-stitching on the interior lining that did not match the remaining stitching and that the liner had an unusual bulge. Boyso-Gutierrez gave permission for the agent to cut the lining. The agent found two bundles containing a white crystalline substance that was later determined to be methamphetamine. Boyso-Gutierrez was placed under arrest and provided *Miranda* warnings.

When questioned by Border Patrol agents, Boyso-Gutierrez explained that he received the suitcase as part of his business and that he did not know anything about the drugs. DEA agents arrived later the same morning and used Border Patrol agents to translate for them when questioning Boyso-Gutierrez further. Boyso-Gutierrez was again provided his *Miranda* warnings in Spanish and signed the warning card. He again explained the nature of his business, namely that he employs drivers and other persons to help him in his business and stores the merchandise from Mexico bound for Houston at Texas USA Transportation until the recipients arrive to retrieve their packages. Boyso-Gutierrez told the agents that on October 23, 2010, he received a telephone call from his clerk in Temexico advising him that there were several packages to be shipped to Houston that contained Mexican candy, toys and ceramic pieces. One of those packages was the black Samsonite suitcase that later was found to contain methamphetamine. The quantity of methamphetamine was worth approximately $300,000, and the drugs were 95% pure.

A large part of the Government's case examined inconsistencies between Boyso-Gutierrez' statements to agents, the record of his border crossings, and other testimony describing his actions and the conduct of his business. Some of the inconsistencies involved the black Samsonite suitcase and how Boyso-Gutierrez came to have it. The Government generally also suggested that Boyso-Gutierrez' business was run in such a way that it could not have been profitable if he only handled legitimate packages. Boyso-Gutierrez testified that the business supported him and his family as well as his employees.

After Boyso-Gutierrez' arrest, the DEA investigated Boyso-Gutierrez' business in Houston and discovered a "very small" storefront in Houston where Boyso-Gutierrez' son, Micario Boyso-Gutierrez (Micario) worked. *Id.*, pp. 221-22. There was also a clerk. The receipt from Boyso-Gutierrez' business identified Augustin Garcia as the shipper of the black Samsonite suitcase in which methamphetamine was found and Anthony Castellano as the intended recipient of the suitcase. The receipt, dated October 26, 2010, listed the suitcase's contents as candy, ceramics, prunes, arepas (a thick tortilla), coconut, and scones for the Day of the Dead. Micario faxed the agent a copy of the Mexican driver's license belonging to the shipper. Micario and the clerk advised the DEA agent that the intended recipient of the suitcase was adamant about wanting his suitcase and that they were becoming fearful.

Maria Dela Luze-Cruz, Boyso-Gutierrez' clerk in Houston, testified at trial that Boyso-Gutierrez had been transporting people and packages between Houston and Mexico since 1998. She began to work for him in 2008. Each of the five business locations in Mexico have a single clerk who prepares the paperwork and receives goods for shipping to the United States. Luze-Cruz identified three drivers who worked for Boyso-Gutierrez: Angel Labra in Houston, Enrique Romero-Boyso, and another Enrique in Mexico. Boyso-Gutierrez had two businesses

registered in Harris County: Fee Box, the packaging business, and Transportes Iguala, the bus service. The bus company was registered in 2005 and the package transport business in 2008.

Other defense witnesses included Boyso-Gutierrez, Angel Labra, and a long-time customer, Delores Ignacia Rendon-Hernandez. Labra testified to a timeline of events that tracked one version of Boyso-Gutierrez' statements to Border Patrol and DEA and corroborated Boyso-Gutierrez' trial testimony. Labra also explained that the black Samsonite suitcase in which the methamphetamine was found crossed the border with Labra's girlfriend's son's girlfriend, Perla Solis Castillo. Perla took four packages across the border, for which she was to be paid $40. She met Boyso-Gutierrez at the Greyhound bus station and delivered the four packages. Boyso-Gutierrez walked across the border with other packages to meet Perla. Labra further testified that he saw the black Samsonite suitcase that was later discovered to have methamphetamine in it when it was in Matamoros, but he did not notice anything unusual about it. He testified that the suitcase was searched at the Brownsville Border Crossing when Perla brought it across.

Boyso-Gutierrez testified that he did not know there were drugs in the black Samsonite suitcase on October 30, 2010. He explained he was terrified when he was interviewed by DEA agents, and could not explain, other than generally, what he had done the week before his arrest. Boyso-Gutierrez did not believe that the DEA agents fully understood his explanations, and he found the Spanish spoken by the various agents hard to understand.

Boyso-Gutierrez inspected the black Samsonite suitcase in Matamoros. He opened it and moved things around. He testified that he sometimes cuts into objects he is carrying to make certain they are what they appear to be. He did not notice a bulge in the lining. He did not tell the agents at the checkpoint that he was transporting the suitcase as part of his business until after

4

the drugs were found. He denied telling the Border Patrol agent that he got the suitcase in Temexico, but instead testified he received it first in Matamoros. The black Samsonite suitcase was delivered to the Temexico office on October 25 and arrived in Matamoros the next day, October 26.

The jury deliberated for two hours during the second day of trial and completed its work the third day of trial. It found Boyso-Gutierrez guilty of possession with intent to distribute methamphetamine and found that the quantity of methamphetamine was greater than 500 grams.

The Court ordered preparation of a Presentence Investigation Report (PSR). The PSR calculated Boyso-Gutierrez' base offense level of 38 based upon 3.69 kilograms of actual methamphetamine. The offense level was increased by two because the drugs were imported from Mexico. Boyso-Gutierrez had no criminal history. His sentencing guideline range was 292 to 365 months with a minimum statutory sentence of 10 years. Counsel filed a sentencing memorandum in which he urged leniency and a statutory minimum sentence based upon Boyso-Gutierrez' background and characteristics. The case was called for sentencing on February 22, 2012 but was postponed to give Boyso-Gutierrez an opportunity to debrief.

Sentencing took place on May 21, 2012. Boyso-Gutierrez testified that he had seen the PSR and discussed it with counsel who filed a sentencing memorandum. D.E. 86, p. 2.[2] Defense

---

[2]
    8 THE COURT: Mr. Gutierrez, you're here
    9 to be sentenced. As you recall, sometime ago --
   10 actually, it was a year ago now, you were found guilty
   11 by a jury. Your sentencing was postponed a couple of
   12 times, but I need to cover something with you. First
   13 of all, one of our probation officers following your
   14 conviction prepared a presentence investigation report,
   15 and delivered it to Mr. Thering -- she did. Have you
   16 had a chance to review it and discuss it with him
   17 before stepping in here to be sentenced?
   18 DEFENDANT GUTIERREZ: Yes.
   19 THE COURT: Okay. All right. Now he
   20 filed on your behalf a sentencing memorandum that I
   21 have read and will certainly consider his arguments in

counsel urged leniency, while the Government argued that he should receive a sentence of 300 months.[3] The Court sentenced Boyso-Gutierrez to a low-end guideline sentence of 292 months. The Court advised Boyso-Gutierrez of his right to appeal.

Boyso-Gutierrez appealed his conviction and sentence. The Fifth Circuit affirmed on April 18, 2013. *United States v. Boyso-Gutierrez*, No. 12-40665 (5th Cir. Apr. 18, 2013) (per curiam) (designated unpublished). Boyso-Gutierrez timely filed the present motion.

## III. ANALYSIS

### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

---

22 there . . . .

*Id.*

[3] The Government argued that Boyso-Gutierrez and his vehicles had been stopped several times with undeclared currency totaling more than $60,000 and he had been stopped with 3.63 kilograms of heroin in May 2010. None of this information came before the jury and Boyso-Gutierrez was never charged with these offenses.

**B. Ineffective Assistance of Counsel**

1. *Standard for reviewing ineffective assistance of counsel claims*

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. *Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Herrera*, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

2. *Counsel failed to provide copies of discovery to Boyso-Gutierrez*

Boyso-Gutierrez alleges that counsel failed to provide him with copies of the Government's discovery or to even discuss that discovery with him. Counsel testified by affidavit as follows:

> At the close of trial, [counsel] provided Mr. Boyso-Gutierrez with copies of requested documents. Counsel subsequently received a request from Mr.

7

> Boyso-Gutierrez stating his friend, Mrs. Luz Cruz was going to contact counsel's office to receive a copy of 'papers used for defense.' Counsel was never contacted by Mrs. Luz Cruz.

D.E. 117.

Boyso-Gutierrez alleges that if he had copies of the discovery, he could have better explained the inconsistent statements that the Government claimed he made. Boyso-Gutierrez was present in Court for his detention hearing and the preliminary examination that took place on November 12, 2010. At that hearing, Ricardo De Luna, a Border Patrol agent, testified to the events that led to Boyso-Gutierrez' arrest, including Boyso-Gutierrez' initial statements to the Border Patrol agents after he was arrested. Additionally, Boyso-Gutierrez was present in Court when agents testified at his trial regarding statements he made to them.

The Court is aware that as a general rule in this district, counsel is not permitted by the Government to take copies of discovery out of the Government's possession, but may only make notes. Counsel cannot provide copies of discovery to his client that he does not possess.

As to Boyso-Gutierrez' claim that counsel failed to discuss any of the Government's discovery with him, the Court finds Boyso-Gutierrez was not prejudiced by counsel's alleged failure to discuss the discovery with him. Counsel put on multiple witnesses to explain what appeared to be troubling inconsistencies in Boyso-Gutierrez' testimony, and Boyso-Gutierrez himself testified as to why the alleged inconsistencies were not inconsistent.

### 3. *Counsel failed to discuss plea agreement with Boyso-Gutierrez*

Boyso-Gutierrez contends that counsel failed to negotiate a plea agreement and mislead and lied to him to induce him to go to trial, and this conduct constituted ineffective assistance of counsel. A criminal defendant has "a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012); *see also Padilla v. Kentucky*, 559 U.S. 356, 373 (2010). The Supreme Court has long recognized that "negotiation

of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla*, 559 U.S. at 373. When a plea agreement is rejected because of counsel's ineffective assistance, "to establish *Strickland* prejudice a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 132 S.Ct. at 1384.

The Court postponed sentencing in February 2013 to allow Boyso-Gutierrez to debrief if he wanted to do so. *See* D.E. 95, pp. 7-10.[4] After a brief recess, defense counsel advised the Court:

> 9 MR. THERING: Yes, Your Honor. I discussed the
> 10 option, the suggestion the Court made, and discussed it
> 11 with Mr. Boyso-Gutierrez. He has asked me to ask the
> 12 Court for a continuance so he may discuss the matter
> 13 further with the Government and the Government's agents. . . .
> 1 MR. MARTINEZ: Judge, this case was in 2010.
> 2 We tried this case in June of 2011. Mr. Boyso has never
> 3 indicated he wanted to cooperate. . . .
> 9 THE COURT: Well, I want to make sure that no
> 10 one was -- and I'm not suggesting to you, Mr. Thering,
> 11 by any means, but we understand about drug cartels, the
> 12 organizations that exist in Mexico and here. I want to
> 13 make sure that he was aware that he could try to help
> 14 himself, you know.
> 15 MR. THERING: Right.
> 16 THE COURT: And that no one was preventing him
> 17 or threatening him in any way to keep him from helping
> 18 himself, because he is looking at a significant

---

[4] 7 THE COURT: Let me ask you something here. I'm
8 not trying to break your chain of thought here. I know
9 he denied the allegations, he went to trial. I accept
10 all that. But he was found with methamphetamine. Has
11 there been any discussions at all as to whether he would
12 want to maybe change his position about all this and
13 provide some assistance to the Government?
14 MR. THERING: We've broached that briefly, and
15 again, as short as this morning, if the Court will
16 indulge me, now that he's in front of you, if he wants
17 to talk to me, if the Court wants to allow him to speak
18 to me in that regard, but it's my understanding that the
19 position hasn't changed.

19 sentence. And here in open court I wanted to make sure
20 Mr. Boyso was aware that if he had information subject
21 to, obviously, counseling as far as whether there is any
22 perjury issues or something -- or obstruction as you
23 refer to it, but if he has information, that it could
24 reduce his sentence possibly. And I wanted to make sure
25 he was aware that he had that right and the Government
1 would protect him in that regard if there was any
2 concern on his part from people in Mexico that would
3 prevent him from providing information. . . . .
16 THE COURT: Well, something that I noticed a
17 while ago or in getting prepared for this sentencing is
18 that Mr. Boyso loses acceptance of responsibility by
19 going to trial. And even if the Government wouldn't
20 file a Rule 35 or even file a 5K or whatever, even if
21 they didn't do that, acceptance of responsibility, the
22 difference in this case from the low end of the
23 Guidelines is seven years in the penitentiary. 292 is
24 at the low end of these Guidelines, and with acceptance
25 just three levels down, it's 210 or something like that,
1 you know, like 82 months difference. That's almost
2 seven years. That is a significant amount of time in
3 the pen just for the difference in not admitting and
4 admitting your involvement. That's why I thought, well,
5 maybe he wants to change his position.
6 The Guidelines say he's not entitled to
7 acceptance. I'm the one who determines whether he gets
8 acceptance depending upon how I find him to be when I
9 sentence him. Before his position was, he's not
10 entitled to acceptance. Now, if he comes to me in a
11 different mode, different position, you know, he might
12 qualify for that. That's another way that maybe he
13 could help himself. So that's why I suggest to him that
14 he may want to change his position. I'm not suggesting
15 he does. I mean, he's asserted his innocence, he has
16 that right, but he's been convicted and I find him today
17 as a convicted felon that I must sentence and he's not
18 entitled to acceptance of responsibility, and that's a
19 seven years difference.
20 So, anyway, that's where we are and that's
21 why I wanted to let you talk to Mr. Martinez and see
22 whether he even wanted to sit down with him and the
23 Government change its position, or not. Your position,
24 I think, is you would rather me sentence him today and
25 let him pursue a 35?
1 MR. MARTINEZ: Yes, Your Honor.

> 2 THE COURT: Okay.
> 3 MR. THERING: I'm asking for a continuance. It
> 4 may not be because he's not following suit, but just on
> 5 the mere fact I would like to have more time with him
> 6 about that acceptance issue, even a short one, a couple
> 7 of weeks, to see if he -- and then in a time frame --
> 8 THE COURT: He doesn't want it, but I'll give
> 9 you that. I mean, he's looking at 25 plus years. I'll
> 10 give you that. I think something -- he needs to do what
> 11 he can.
> 12 MR. THERING: Yes, sir.
> 13 THE COURT: And over Mr. Martinez's objection,
> 14 I'll give you another 30 days.
> 15 MR. THERING: Yes, sir. Thank you, Your Honor.

*Id.*, pp. 9-14.

When Boyso-Gutierrez appeared for sentencing in May 2012, he had decided to maintain his innocence and not to cooperate with the Government:

> 18 THE COURT: Now let me make sure I
> 19 understand that you are fully aware of what you can do.
> 20 Mr. Thering and Mr. Martinez both indicated that you
> 21 were asked to debrief. Debrief means that you provide
> 22 information about maybe some other people involved in
> 23 this transaction. You were asked to do that last week
> 24 or sometime earlier, and you chose not to do that,
> 25 maintaining your innocence, and I understand it. But I
> 1 want you to understand, that as I sit here I also must
> 2 respect the verdict of the jury which means you were
> 3 found guilty. I'm not in any position at this point to
> 4 set aside that verdict. I'm going to respect it, and
> 5 sentence you accordingly. So as you stand before me
> 6 you are guilty. I want to make sure that you
> 7 understand you have the right, if you want to change
> 8 your position and provide information to the
> 9 Government, you may do that. And you understand you
> 10 have that right?
> 11 DEFENDANT GUTIERREZ: Yes, Your Honor.
> 12 THE COURT: Let me make sure of one
> 13 other thing: Has anyone threatened you in any way to
> 14 keep you from doing that?
> 15 DEFENDANT GUTIERREZ: No, Your Honor.
> 16 No one has threatened me with anything.

D.E. 86, pp. 10-11.

11

Boyso-Gutierrez' claim that counsel failed to negotiate a plea agreement is undercut by his testimony in open court even after he understood that admitting responsibility could take seven years or more off his sentence. He cannot demonstrate ineffective assistance of counsel on this issue.

As to Boyso-Gutierrez' allegation that counsel lied to and mislead him to induce him into going to trial, Boyso-Gutierrez has not identified any particular misrepresentations, other than counsel's alleged miscalculation of his sentencing exposure that is addressed separately. As a result, his claim is conclusory. Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *see also United States v. Jones*, 614 F.2d 80 (5th Cir. 1980) (Failure of movant to state specific facts, "is insufficient to state a constitutional claim."). Because Boyso-Gutierrez has not sufficiently stated facts to support his claim, he has not met his heavy burden to overcome the presumption that counsel rendered reasonably effective assistance.

### 4. *Counsel miscalculated Boyso-Gutierrez' sentencing exposure*

Boyso-Gutierrez alleges that counsel promised him that the most time he would serve was 10 years. He does not provide any details, such as when the alleged promise was made, which interpreter or other person was present, or how this alleged promise came about. Counsel denies making the alleged promise and testified that he explained the Federal Sentencing Guidelines to Boyso-Gutierrez numerous times. D.E. 117, ¶ d. Moreover, the Indictment references 21 U.S.C. § 841(b) which provides a *statutory minimum sentence of 10 years* for persons convicted of knowingly possessing 500 grams or more containing a detectable amount of methamphetamine.

As with Boyso-Gutierrez' previous complaint, the Court finds the lack of factual detail provided by Boyso-Gutierrez renders his complaint conclusory. Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. *Woods*, 870 F.2d at 288 n.3; *see also Jones*, 614 F.2d at 82. Because Boyso-Gutierrez has not sufficiently stated facts to support his claim, he has not met his heavy burden to overcome the presumption that counsel rendered reasonably effective assistance.

### 5. *Counsel had a conflict of interest due to his relationship with Angel Labra*

Boyso-Gutierrez alleges that counsel had a conflict of interest due to an alleged relationship with Angel Labra. Labra is one of Boyso-Gutierrez' employees who testified at trial regarding Boyso-Gutierrez' activities and business practices. Boyso-Gutierrez does not claim that defense counsel and Labra had a preexisting relationship, nor does he claim Labra and counsel had an attorney-client relationship.

When counsel breaches his duty of loyalty to his client, by having an actual conflict of interest, prejudice may be presumed. *See Betts v. Scott*, 65 F.3d 1258, 1265 (5th Cir. 1995) (en banc) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). In nearly every other context, *Strickland* "offers a superior framework for addressing attorney conflicts outside the multiple or serial client context." *Betts*, 65 F.3d at 1265.

Ultimately, Boyso-Gutierrez does not state any facts to support his claim that defense counsel had a conflict of interest or what caused the alleged conflict. The most Boyso-Gutierrez states is that after defense counsel was in touch with Labra, counsel's "perception of the case changed dramatically, yet he took Boyso to trial instead of getting him a plea deal. It is clear that [defense counsel] and Angel Labra entered into a conspiracy to send Boyso to prison for a long time." D.E. 119, p. 6. Boyso-Gutierrez references a letter that Labra allegedly sent to

Boyso-Gutierrez through counsel. *See* D.E. 119-1, 119-2 (English Translation). In the letter, Labra wrote down what appears to be a chronology of events from October 23, 2010 through October 29, 2010. The letter tracks the substance of Labra's testimony at trial. The facts provided do not establish a conflict of interest between counsel and Boyso-Gutierrez.

### 6. *Counsel failed to subpoena trial witnesses and investigate evidence for trial*

Boyso-Gutierrez alleges that counsel failed to subpoena witnesses to trial and failed to obtain documentary evidence helpful to him. Boyso-Gutierrez identified the following witnesses that should have been called to testify at trial: Jeny Casiano, the office manager of the bus terminal in Temexico; Enrique Romero, a bus driver for Boyso-Gutierrez who took the black suitcase from Temexico to Matamoros; Angel Labras' daughter-in-law Juliana, the person who carried the suitcase through U.S. Customs; and Rafael, a Houston Police Department officer to whom Boyso-Gutierrez allegedly passed information to regarding suspicious packages. Additionally, Boyso-Gutierrez alleges that he requested that counsel obtain video surveillance from the Temexico bus station, the Greyhound Bus station for October 27, 2010, and a copy of the identification documents from the person who sent the black Samsonite suitcase.

"[A]n attorney must engage in a reasonable amount of pretrial investigation and[,] at a minimum, interview potential witnesses and make an independent investigation of the facts and circumstances in the case." *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994) (internal quotation marks and alterations omitted). Trial counsel's "failure to interview eyewitnesses to the crime was constitutionally deficient representation." *Id*. at 1418. Nevertheless, "complaints of uncalled witnesses are not favored" in post-conviction proceedings. *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 1997). "[W]hen 'the only evidence of a missing witnesses' [sic] testimony is from the defendant, this Court views the claims of ineffective assistance with great

14

caution.'" *Id*. (quoting *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001)). A defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony and willingness to testify is usually fatal to an ineffective assistance of counsel claim. *Id*.; *see also Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Defense counsel advised the Court on the first day of trial that he had two witnesses from Mexico he was trying to get into the United States to testify, Jenny Tinnico and Enrique Romero-Boyso. Counsel had some concerns about getting Romero-Boyso across the border due to his criminal record.

Boyso-Gutierrez has not demonstrated that the bus station office manager, Jeny Casiano, would have been willing to appear at the time of the trial or that she would have been able to testify as he describes. The same is true for the Houston Police officer whose surname Boyso-Gutierrez has not provided. As to Enrique Moreno-Boyso, it is apparent that counsel attempted to get him for trial, but due to circumstances beyond counsel's control, he was unable to do so. Furthermore, counsel presented other evidence from Boyso-Gutierrez and Labra that Boyso-Gutierrez did not go to Temexico, that the black Samsonite suitcase was shipped from Temexico to Matamoros and was transported across the border by a young woman who dated Labra's girlfriend's son, Perla. Additionally, the identification information for the shipper of the black Samsonite suitcase was presented at trial as a defense exhibit through Luze-Cruz. As to the video surveillance, Boyso-Gutierrez has not established that such evidence existed or that it showed what he claims. Boyso-Gutierrez has failed to demonstrate the nature of the evidence that he claims counsel should have obtained and thereby cannot establish any prejudice from counsel's alleged failure to obtain that evidence. No ineffective assistance is shown.

       7. *Counsel failed to provide or discuss the PSR or file a sentencing memorandum*

Boyso-Gutierrez alleges that counsel failed to get him a copy of his PSR or to translate it for him and review it with him. He also claims that counsel failed to file a sentencing memorandum. The record contradicts both claims.

The Court referenced the sentencing memorandum at the February 2012 call for sentencing, and Boyso-Gutierrez testified counsel reviewed both the sentencing memorandum and the PSR with him.[5] Again at sentencing in May 2012, Boyso-Gutierrez testified he reviewed and discussed the PSR with counsel. The Court also referenced the sentencing memorandum again.[6]

---

[5]
```
16 THE COURT: Mr. Boyso, you are here to be
17 sentenced. As you recall, you were found guilty by a
18 jury of possession with intent to distribute
19 approximately four kilos of methamphetamine. After you
20 were convicted, I ordered a Presentence Investigation
21 Report to be prepared to provide me with information
22 that I could use in determining what I believe to be a
23 sufficient sentence. One of the local officers prepared
24 the report and delivered it to Mr. Thering.
25 Have you had a chance to review that
1 report and discuss it with him before coming up here to
2 be sentenced?
3 DEFENDANT BOYSO-GUTIERREZ: Yes.
4 THE COURT: All right. He filed a sentencing
5 memorandum on your behalf. Did you get a chance to
6 review it with him, that Sentencing Memorandum?
7 DEFENDANT BOYSO-GUTIERREZ: Yes.
```
D.E. 95, pp. 3-4.

[6]
```
12   First
13 of all, one of our probation officers following your
14 conviction prepared a presentence investigation report,
15 and delivered it to Mr. Thering -- she did. Have you
16 had a chance to review it and discuss it with him
17 before stepping in here to be sentenced?
18 DEFENDANT GUTIERREZ: Yes.
19 THE COURT: Okay. All right. Now he
20 filed on your behalf a sentencing memorandum that I
21 have read and will certainly consider his arguments in
22 there, looks like needs some adjustments.
```
D.E. 86, p. 2.

When a movant's allegations contradict earlier sworn testimony in court, courts have typically required that the allegations be supported by the affidavit of a reliable third person. *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013). Boyso-Gutierrez has no evidence in support of his present claims other than his own affidavit, which is contradicted by his earlier testimony. He has not demonstrated ineffective assistance of counsel.

8. *Counsel failed to provide Boyso-Gutierrez with consular access*

Boyso-Gutierrez contends that "no law enforcement authority advised him of his right to consular access." D.E. 112-1, p. 22. He claims that he advised the magistrate judge on October 30, 2010 that he wished to contact the Mexican consulate. The hearing minutes reflect that the case agent was instructed to notify the Mexican consulate. After this hearing, Boyso-Gutierrez was appointed counsel from the Office of the Federal Public Defender. Boyso-Gutierrez did not employ defense trial counsel until 10 days later. In his Reply, Boyso-Gutierrez alleges that he conveyed his request for consular access to defense trial counsel before sentencing and asked counsel to bring it up with the Court. Counsel denies receiving such a request. Counsel recalls a conversation with someone from the Consulate and understood that Boyso-Gutierrez had made contact through his friend, Luz Cruz.

"Article 36 of the Convention concerns consular officers' access to their nationals detained by authorities in a foreign country. The article provides that 'if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner.' Art. 36(1)(b)." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 331 (2006). It appears that the magistrate judge ordered compliance with this provision. Moreover, the Fifth Circuit has rejected the notion that

Article 36 creates individually enforceable rights. *See United States v. Jimenez-Nava*, 243 F.3d 192, 197–98 (5th Cir. 2001). Under the circumstances, the Court does not find any prejudice from counsel's alleged failure to bring the issue before the Court at sentencing, and it otherwise appears to the Court that the requirements of the Vienna Convention were satisfied.

### C. Motion for Evidentiary Hearing

Boyso-Gutierrez requests an evidentiary hearing on his claims, but the Court finds that the current record is sufficient to decide Boyso-Gutierrez' motion. Boyso-Gutierrez' request for evidentiary hearing is denied.

### V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Boyso-Gutierrez has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11, § 2255 Rules.

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court finds that Boyso-Gutierrez cannot establish at least one of the *Slack* criteria. Accordingly, he is not entitled to a COA as to his claims.

## VI. CONCLUSION

For the foregoing reasons, the Government's motion to dismiss (D.E. 118) is **GRANTED**, Boyso-Gutierrez' motion to vacate, set-aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 112) is **DENIED**, and Boyso-Gutierrez is **DENIED** a Certificate of Appealability.

It is so **ORDERED.**

**SIGNED** on this 26th day of August, 2015.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE